**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CHRISTINE HOSKIN MADSEN,** | : CIVIL ACTION NO.: |
|    **Plaintiff** | : |
| | : |
| **v.** | : |
| | : |
| **MILTON HERSHEY SCHOOL, MILTON** | : |
| **HERSHEY EDUCATION ASSOCIATION/** | : |
| **PSEA-NEA, RUBEN NAZARIO, SCOTT** | : |
| **RICHARDSON, ROBERT FEHRS,** | : JURY TRIAL DEMANDED |
| **TOM FERGUSON, PETER** | : |
| **GURT, JOHN O=BRIEN and TOM SCOTT** | : |

**COMPLAINT**

AND NOW, comes Plaintiff Christine Hoskin Madsen, by and through her attorney,

Andrew J. Ostrowski, Esquire, and in support of her Complaint, avers as follows:

1.      Plaintiff, Christine Madsen is an adult African-American black female, who

currently resides at 112 North Pine Street, Middletown, Pennsylvania 17057, who at all times

relevant to this Complaint was an employee of the Milton Hershey School.

2.      Defendant, Milton Hershey School is an authorized school within the

Commonwealth of Pennsylvania, with its principal offices located at P.O. Box 830, 801 Spartan

Lane, Hershey, Pennsylvania 17033.

3.      Defendant Milton Hershey Education Association/PSEA-NEA is the exclusive

representative for all full-time and regular part-time employees of the Milton Hershey School in

the bargaining unit certified by the National Labor Relations Board.

4.      Defendant Ruben Nazario is an adult individual, who at all times relevant to this

1

Complaint was the Vice President of Human Resources and Operations at Milton Hershey School.

5.    Defendant Scott Richardson is an adult individual, who at times relevant to this Complaint was the Interim Principal or Principal at Milton Hershey School.

6.    Defendant Robert Fehrs is an adult individual, who at all times relevant to this Complaint was an Administrator for Milton Hershey School.

7.    Defendant Tom Ferguson is a union representative and agent of the Milton Hershey Education Association/PSEA-NEA.

8.    Defendant Tom Scott is an attorney employed with the law firm of Killian & Gephart and serves as Counsel for the Milton Hershey Education Association PSEA-NEA.

9.    Defendant John O=Brien is an adult individual, who at all times relevant to this Complaint was the President of Milton Hershey School.

10.    Defendant Peter Gurt is an adult individual, who at all times relevant to this Complaint was the Vice President of Milton Hershey School.

11.    Jurisdiction is based on 28 U.S.C. Section 1331 and 1343 as it involves violations of Plaintiff's rights under the civil rights laws of the United States.    The unlawful practices and violations of civil rights described herein were committed, in part, in the Middle District of the Commonwealth of Pennsylvania.

**FACTUAL BACKGROUND**

12.    Paragraphs 1-11 are incorporated herein by reference in their entirety.

13.    Plaintiff became employed by Milton Hershey School in approximately 1992 as a teacher at Catherine Hall, the Middle School facility of the Milton Hershey School.

14.    Plaintiff is a nationally certified teacher by the National Board for Professional Teaching Standards.

15.    On or around January 1995, Plaintiff had a meeting with Dr. Lepley, Tammie Queen and Rod Chamberlain in which she raised concerns about academic neglect of children, including the practice of leaving a black student segregated uninstructed for extended periods of time.

16.    When Plaintiff expressed her concerns to Defendant Richardson, who at the time was a teacher, he stated that because Milton Hershey is a private school they can conduct such matters any way they wished.  He expressed to Plaintiff that the school could even set up separate water fountains for black and white students.

17.    In or around 1994 Chamberlain informed faculty members who had raised concerns with the practices at the Milton Hershey School that they would need to simply accept prejudice as part of the conditions of their employment.

18.    In or around September, 1996, Plaintiff was not allowed to apply for any of five positions that were available with the school despite the fact that Plaintiff was qualified for the positions and that she had previously expressed an interest in these positions.

19.    The Curriculum Director told her that her and a Jewish woman were not the right kind of people and white employees were then hired for the positions.

20.     On or around October 29, 1996, Plaintiff filed a complaint with the Pennsylvania Human Relations Commission alleging she was discriminated against by Milton Hershey School in that she, as a black woman, was denied the opportunity to apply for a position as a Certified Trainer Faculty Facilitator.

21.     On or around November 4, 1997, Plaintiff was called into a meeting which lasted over an hour and a half with Edward Ruth, Steve Kitzmiller, and Tammie Queen, in which she was informed that her performance was less than satisfactory and that she needed to be retrained.

22.     Plaintiff had never before received any complaints about her teaching performance.

23.     On or around February 28, 1998, Plaintiff filed a second complaint with the Pennsylvania Human Relations Commission in which she stated facts that supported that she, as a black woman, was treated differently by the administration of Milton Hershey School than white employees.

24.     On or around August 8, 1998, Plaintiff and Milton Hershey School entered into an Agreement to settle the complaints.  During the negotiation process, an attorney for Milton Hershey School openly acknowledged to Plaintiff the existence of race relations problems at the school.  The Agreement contained provisions that Plaintiff was entitled to bid on positions for the following school year and allowed a written account of Plaintiff=s contributions to the school to be placed into Plaintiff=s personnel file .

25.     Between the fall of 1998 to spring of 1999, Plaintiff was repeatedly harassed by a male student with threats that he was going to beat her up and hurt her.

26. When Plaintiff reported these incidents to the administration of Milton Hershey School, the school administration ignored her complaints and insisted that it was a personal conflict. However, when white teachers have voiced complaints about threats, the administration has reacted promptly with disciplinary sanctions.

27. In or around March of 2003, Defendant Richardson became interim principal of Catherine Hall.

28. Almost immediately upon taking the position, Defendant Richardson began a pattern of aggressive and discriminatory behavior toward Plaintiff.

29. On April 4, 2003, Plaintiff secured a substitute to teach her classes scheduled for that day and attended the annual National Black Writers= Conference in New York City, believing that she had the approval and support of Defendant Richardson due to previous conversations and the submission of paperwork to which Defendant Richardson gave no indication that he was opposed to Plaintiff attending the conference.

30. At the time that Plaintiff attended the conference, Milton Hershey School had no procedure for teachers to follow when attending conferences - the proper procedure for teachers to follow when attending conferences was given for the first time in Catherine Hall on August 18, 2003.

31. Despite the fact that there was no established procedure to request to attend a conference, Plaintiff was disciplined for failing to follow proper procedure in obtaining approval to attend the conference.

32. When Plaintiff complained that she believed that the issuance of a written warning was excessive, because they were only to be issued in cases of gross misconduct, Defendant Richardson told her that he already had the job as principal, so she should get

5

accustomed to his authority,  despite the fact that he was still acting as interim principal and the interview process had not begun.

33.    In the Spring of 2003, Defendant Richardson conducted a formal observation of Plaintiff=s classroom.

34.    Defendant Richardson deemed Plaintiff=s teaching performance as unsatisfactory and admonished Plaintiff for the rubric that she used to assess student reading, despite the fact that the rubric method was recommended by Penn Reading Standards.

35.    In June 2003, Defendant Richardson indicated in Plaintiff=s end of the year evaluation that Plaintiff was creating a negative atmosphere in the building, although he failed to offer any examples or documentation of specific behavior by Plaintiff that evidenced such behavior.

36.    On or about October 23, 2003, Defendant Richardson called a disciplinary meeting, attended by Defendant Richardson, Debra Brown, Defendant Fehrs, Kurt Nielson, Defendant Ferguson in which Defendant Richardson claimed that Plaintiff was gossiping about him, making inappropriate accusations and engaging in conversations that were detrimental to school culture.

37.    Following the meeting, Debra Brown contacted Plaintiff and informed her that the matter should be forgotten, and Defendant Richardson wrote a letter to Plaintiff stating that no oral or written warning had been issued concerning the incident, but that she was to refrain from >negative talk=.

6

38.     On or around February 17, 2004,  Plaintiff attended a teacher=s meeting in which she made a suggestion that students with severe literacy problems be pulled out of their creative classes, such as art and theater, and give them intensive reading assistance during these class times.

39.     On or about February 18, 2004, it was brought to Plaintiff=s attention that some of her colleagues who teach creative and exploratory subjects were upset about the suggestion that Plaintiff had made at the meeting and five or six white teachers demonstrably rose and left the table when she approached during lunch.

40.     Defendant Richardson participated in this shunning behavior through the remainder of that week in that he was aware of the actions of the white teachers against Plaintiff and never intervened on Plaintiff=s behalf to take any action.

41.     On or about February 25, 2004, Plaintiff received an email from Defendant Richardson, in which he wanted to schedule a meeting to discuss comments Plaintiff made to other adults and students for the following Monday and that she should bring representation to the meeting concerning the February 17, 2004 teacher=s meeting.

42.     On or about March 1, 2004, Plaintiff received advice from Human Resources employee Leigh Farrar not to have any disciplinary meetings with Defendant Richardson until Human Resources approved the meeting, but that Plaintiff was to participate in discussing routine school matters with Defendant Richardson.

43.     On or about March 6, 2004, while conducting parent meetings,  Defendant Richardson confiscated Plaintiff=s grade book from the table without the permission of Plaintiff and informed her that the meeting he desired was scheduled for March 9, 2004, despite the fact that she had been unsuccessful in contacting Defendant Ferguson.

7

44.    On or about March 9, 2004, Plaintiff sent Defendant Richardson an e-mail in which she indicated that she would meet with him as soon as Defendant Ferguson could be there, and that she was unhappy about the manner in which Richardson confiscated her grade book without allowing her the opportunity to retrieve personal items from it.

45.    Shortly thereafter, Defendant Richardson barged into the classroom in which Plaintiff was teaching, waved her grade book in front of her and yelled at Plaintiff that there was no personal documents inside of the grade book while her students observed the entire incident, causing Plaintiff to be extremely frightened and embarrassed.

46.    On or about March 11, 2004, Plaintiff attended a meeting which was also attended by Defendant Nazario, Defendant Richardson, Leigh Farrar, Bob Johnston and Defendant Ferguson in which Defendant Richardson accused Plaintiff of maligning him, gossiping, that she had classroom management problems and that she did harm to children.

47.    At the meeting, Defendant Nazario said that Defendant Richardson needed harmony with his staff and that Plaintiff was interfering with this, without providing any examples.  Nazario told Plaintiff that because of her race and her prior complaints, she did not fit in to their plans for the school.

48.    On or around March 13, 2004, Defendant Ferguson and Kurt Nielson returned Plaintiff's grade book to her and stated that she was going to be forced to participate in a Focus Assistance Plan.  Upon information and belief, this plan was concocted as a means to secure the pretextual termination of Plaintiff's employment.

49.    The Focus Assistance Plan required three classroom observations per week and mandated weekly update meetings to review her progress toward the goals of the Plan.

50.    Defendant Ferguson recommended that Plaintiff not do the weekly meetings with Defendant Richardson, since Defendant Ferguson believed that Defendant Richardson=s attitude toward Plaintiff was too aggressive.

51.    Between March 1, 2004 and April 6, 2004, Plaintiff was referred to by students using the word Anigger.@

52.    When Plaintiff referred both students to the office, they were given a mild punishment and immediately sent back to the classroom by Assistant Principal Brown.

53.    On or about May 7, 2004, Catherine Hall held a parent show, which featured skits that contained racial slurs pertaining to Mexicans or Latinos which was very upsetting to some of the students.

54.    Following the skit, Defendant Richardson congratulated everybody on a great performance without apologizing for the insensitive and offensive content of the production.

55.    Following the show, there was an increase in name-calling and the use of derogatory ethnic slurs among the students.

56.    On or about May 24, 2004, Plaintiff sent a student  to the office for being disrespectful to her.

57.    On or about May 25, 2004, Plaintiff sent a student to the office for copying unrelated homework.

58.    On or about May 26, 2004, Assistant Principal Brown sent Plaintiff an email which stated that she should refrain from sending students out of the room because it gives the message that Plaintiff does not have control of the classroom and that Plaintiff should use other methods such as using a verbal warning, red card, redirect the student or pair them with another student to complete the assignment.

59.    Students who are referred to the office as a result of disrespectful behavior toward white teachers are treated much more harshly than the treatment received by students referred to by Plaintiff. Plaintiff is not aware of any white teachers who were discouraged from sending disruptive and disobedient children to the office.

60.    On or about June 3, 2004, Plaintiff was informed by Nazario that her employment was not working out and that her options were to take a buy out, grieve or wait until Richardson found a cause for dismissal and she was placed on administrative leave of absence.

61.    A meeting was held on June 8, 2004 pertaining to Plaintiff=s employment at Milton Hershey School attended by Mr. Nazario, Defendant Richardson, two union representatives, Plaintiff and her attorney.

62.    Two union representatives appeared at the meeting, despite the fact that Plaintiff clearly communicated her decision to have a private attorney represent her interests.

63.    Defendant Nazario began the meeting by explaining the labor relations issues.

64.    Defendant Nazario became openly disdainful of Plaintiff=s counsel when he asked a question about notice issues and Defendant Nazario and Defendant Richardson simply walked out of the meeting in unison when Plaintiff=s counsel informed the Defendants that there was no need to go into the grievance process in detail because he was familiar with it, and Plaintiff was waiving it.

65.    No paperwork regarding administrative or disciplinary actions was provided to Plaintiff or her lawyer at the meeting.

66.    Defendant MHEA, PSEA/NEA provided Plaintiff with written ratification of Plaintiff's right to opt out of exclusive union representation and the contractual grievance procedures by correspondence dated June 10, 2004.

10

67.    On or around August 15, 2004, Defendant Ferguson contacted Plaintiff by telephone and advised her to meet with him at Hoffer Park in Middletown, Pennsylvania and advised her not to bring her counsel with her.

68.    The purported purpose of the meeting was to address issues concerning the procedure between the Union and Milton Hershey School for situations where an employee is represented by an attorney, and was not to address the termination of Plaintiff=s employment.

69.    On or around August 16, 2004, Plaintiff met Defendant Ferguson and Bob Johnston at the park where they attempted to coerce Plaintiff into signing a document that would withdraw any and all claims that she had against the Milton Hershey School or the Milton Hershey Educational Association/PSEA-NEA and end her employment.

70.    On or around August 18, 2004, Plaintiff was contacted by Defendant Nazario regarding a meeting for August 19, 2004, in which Plaintiff was advised that she would not be entitled to representation by her attorney, but would be forced to accept representation by the Union.

71.    On or around August 19, 2004, Plaintiff and her attorney appeared at the meeting as advised by Defendant Nazario where Plaintiff=s attorney was informed by Defendant Nazario that they would only recognize the Union to act on Plaintiff=s behalf.

72.    Defendant Nazario advised Plaintiff=s Counsel that should he insist on continued participation, Plaintiff would immediately be placed on leave without pay.

73.    Upon information and belief, Defendant Nazario had another employee contact security to have Plaintiff=s attorney removed from the premises.

74.    On November 3, 2004, Plaintiff was summoned to a meeting in Defendant Nazario=s office in which Defendant Nazario, Defendant Richardson, Janet Pfieffer and Randy Thorton were present.

75.    In violation of her rights under the union agreement, Plaintiff was not granted the opportunity to have her counsel present or counsel from PSEA present, despite the fact that Defendants knew that she had retained counsel, and was entitled to representation.

76.    At the time of the meeting Plaintiff made a short statement from notes she had prepared, which included the statement that she was willing to go to work and reiterated that she had retained a lawyer, but Defendant Nazario told her that she was on administrative leave without pay and benefits effective immediately.

77.    By correspondence dated December 3, 2004, Plaintiff communicated directly with the Milton Hershey Board, and other individuals named therein, concerning the foregoing issues and other matters related to her employment, including her clearly and repeatedly expressed assertions that her civil rights were continuing to be violated.

78.    By correspondence post-marked December 6, 2004, but dated December 3, 2004, Defendant Nazario advised the Plaintiff of her termination from employment.

## COUNT ONE

79.     Paragraphs 1 through 78 are incorporated herein by reference in their entirety.

80.     Defendants intentionally discriminated against and knowingly subjected Plaintiff to a hostile work environment based upon her race and have abridged her rights to enjoy the terms, benefits and privileges of her employment, her rights as a member of a collected bargaining unit, and her right to sue, be a party and/or give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons or property.

81.     Upon information and belief, Defendants intentionally discriminated against and knowingly violated Plaintiff's rights under federal law by subjecting her to retaliatory and discriminatory actions as a result of her two complaints with the Human Relations Commission and the terms, benefits and privileges of her agreement with the Milton Hershey School.

82.     As a direct and proximate result of the Defendant=s unlawful actions as alleged herein, Plaintiff has been subjected to the loss of income and professional opportunities and has endured, and continues to endure, extreme humiliation, upset, embarrassment, and shame, all for which she is entitled to compensation and equitable remedial relief.

83.     The actions and conduct of the Defendants as alleged herein was reckless, wanton, outrageous and was taken without regard for the rights and interests of Plaintiffs and others similarly-situated and Plaintiff is entitled to an award of punitive damages.

84.     Some or all of te foregoing actions and conduct of some or all of the Defendants was undertaken pursuant to an illicit plan and agreement between and among them and other of the Defendants knew of the unlawful conduct and conspiracy, and neglected or refused to prevent the consequences of the same.

13

85.    Each of the individual Defendants either directly participated in the violations of Plaintiffs rights as stated herein and/or each knew or should have known of the actions of such others and acquiesced in the violations of Plaintiff's rights, and the actions constituting the violation of those rights.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against Defendants for compensatory damages, punitive damages, attorney=s fees, costs and all appropriate equitable and/or legal relief to which she is entitled and requests that this Court order an appropriate remedial scheme to correct the harm to Plaintiff and prevent it from occurring in the future.

Respectfully submitted,

Bailey & Ostrowski

By:    /s/ Andrew J. Ostrowski
Andrew J. Ostrowski, Esquire
PA I.D. No.: 66420
4311 North Sixth Street
Harrisburg, PA 17110
(717)221-9500

14